IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN ACKERBERG,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CITICORP USA, INC., *et al.*,<br><br>　　　　Defendants.<br>　　　　　　　　　　　　　　　　　/ | No. C 12-03484 SI<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS; AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION OF THE COURT'S SEPTEMBER 28, 2012, MINUTE ORDER** |

On September 28, 2012, the Court held a hearing on defendants' motion to compel plaintiff Susan Ackerberg to arbitrate her state law claims. The Court, having considered the parties' papers and the evidentiary record before it, hereby GRANTS defendants' motion to compel arbitration and STAYS proceedings pending resolution of the arbitration. The Court also DENIES plaintiff's motion for leave to file a motion for reconsideration of the Court's September 28, 2012, minute order for the reasons set forth below.

**BACKGROUND**

**I.	Factual History**

　　**A.	The Credit Agreements Between Plaintiff and Sears National Bank.**

In or about December 1992, plaintiff opened a credit-card account with the Sears, Roebuck & Company department store. Pogwist Supp. Decl. ¶ 6; Barnette Supp. Decl ¶ 3. The card bore the Sears name and was issued by an affiliate, Sears National Bank ("Sears"). Pogwist Supp. Decl. ¶ 3. Although neither party possesses the original credit agreement, *id.*, plaintiff avers that the agreement did not

contain an arbitration clause, Ackerberg Supp. Decl. ¶ 1, and defendants do not dispute the veracity of plaintiff's averment, *see generally* Defs.' Sur-Reply, Dkt. 30.

Information about the terms and conditions of plaintiff's contractual relationship with Sears is non-existent until July 1999, the first year for which defendants produced an exemplar of the credit card agreement, including an arbitration clause, then governing Sears credit-card accounts.[1] Pogwist Supp. Decl. ¶ 7, Ex. A. Going forward, Sears unilaterally amended the terms and conditions of plaintiff's credit agreement three more times in 2001, 2002, and 2003. *Id.* ¶ 7.

### B. The Credit Agreements Between Plaintiff and Citibank USA, N.A.

In November 2003, Sears assigned plaintiff's credit-card account to Citibank USA, N.A ("Citibank").[2] Barnette Supp. Decl. ¶ 4. Shortly thereafter, Citibank notified plaintiff that it would be modifying the terms of all former Sears accounts. *Id.* ¶ 5. The modifications would include changes to, *inter alia*, the arbitration clause and the governing law. *Id.* The notice also stated that all cardholders had the right to opt out of the changes by terminating the contract via written notice within sixty days. *Id.* ¶ 6. A cardholder could pay off any outstanding balance at once or under the existing terms of the previously binding credit agreement. *Id.* ¶ 6, Ex A.

In January 2009, Citibank again sent plaintiff a "Notice of Change in Terms, Right to Opt Out and Information Update," stating that her credit agreement would be modified, including the terms of the arbitration agreement and the governing law. *Id.* ¶ 8, Ex. 4. Again Citibank gave plaintiff the opportunity to opt out of the modifications by either writing or calling before March 31, 2009. *Id.* ¶ 9, Ex. 4. Plaintiff could have then paid off any outstanding balance she had under her existing terms. *Id.*

On November 19, 2010, Citibank sent plaintiff another notice of changes to the credit agreement.

---

[1] In response to the Court's September 12, 2012, order, defendants failed to include a 1998 exemplar agreement, which was which was likely within the scope of the supplemental briefing requested by that order. The 1998 exemplar was included in a case cited to by defendants' counsel, *Daugherty v. Experian Info. Solutions, Inc.*, 847 F. Supp. 2d 1189 (N.D. Cal. 2012). In *Daugherty*, a paralegal at Citigroup Management Corporation, Adam Pogwist (also a declarant here), attached the 1998 exemplar. The Court directed defendants' counsel to file a letter explaining their omission and attaching the 1998 exemplar. For the reasons set forth below, the 1998 exemplar is unnecessary to resolve the instant motion.

[2] Citibank USA, N.A. was subsequently merged into Citibank (South Dakota), N.A., which in turn was merged into Citibank, N.A., a defendant in the instant action.

Barnette Decl. ¶ 8, Exh. 1; Barnette Supp. Decl. ¶ 11. The 2010 credit agreement states that "[t]his Agreement is binding on you unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card." Barnette Decl. ¶ 8, Exh. 1 at 1.

## II. Procedural History

On April 16, 2012, plaintiff filed a complaint in Sonoma County, California Superior Court alleging violations of the Song-Beverly Credit Card Act of 1971 and the California Elder Abuse statutes based on defendants' debt-collection practices. Dkt. 1, Ex. A ("Compl.") at 6-9. Defendants removed the action to this Court; and on August 3, 2012, defendants moved to compel arbitration and stay the instant proceedings. After initial briefing, the Court directed additional briefing, and the parties filed sur-replies, including all evidence of the original credit agreement and subsequent modifications thereof.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.* If such a showing is made, the District Court shall also stay the proceedings pending resolution of the arbitration at the request of one of the parties bound to arbitrate. *Id.* § 3.

The Supreme Court has stated that the FAA espouses a general policy favoring arbitration agreements. *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1745-46 (2011). Federal courts are required to rigorously enforce an agreement to arbitrate. *See id.* Courts are also directed to resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476-77 (1989).

In determining whether to issue an order compelling arbitration, the court may not review the merits of the dispute but must limit its inquiry to: (1) whether the contract containing the arbitration agreement evidences a transaction involving interstate commerce; (2) whether there exists a valid agreement to arbitrate; and (3) whether the dispute(s) fall within the scope of the agreement to arbitrate.

*See Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477-478 (9th Cir. 1991), *cert. denied*, 503 U.S. 919 (1992). If the answer to each of these queries is in the affirmative, then the court must order the parties to arbitration in accordance with the terms of their agreement. *See* 9 U.S.C. § 4. Moreover, if there is a genuine dispute of material fact as to any of these queries, a District Court should apply a "standard similar to the summary judgment standard of Fed. R. Civ. P. 56." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004); *Nguyen v. Barnes & Noble, Inc.*, No. 8:12-cv-0812, 2012 WL 3711081, at *2 (C.D. Cal. Aug. 28, 2012).

However, the strong presumption in favor of arbitration "does not confer a right to compel arbitration of any dispute at any time." *Volt*, 489 U.S. at 474. The FAA provides that arbitration agreements are unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). This is because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Accordingly, the Court reviews plaintiff's arbitration agreement in light of the "liberal federal policy favoring arbitration," *Concepcion*, 131 S. Ct. at 1745, and considers the enforceability according to the laws of the state of contract formation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Ingle v. Circuit City Stores*, 328 F.3d 1165, 1170 (9th Cir. 2003).

## DISCUSSION

Defendants contend that plaintiff's claims must be arbitrated pursuant to her current credit-card agreement, as modified over time. Plaintiff argues that because her original credit-card agreement contained neither an arbitration clause nor a modification clause that would have permitted defendants to add one later, the current arbitration clause putatively governing her present claims is unenforceable. Furthermore, plaintiff argues that even if the arbitration clause was validly added to the credit agreement, it is unenforceable because it is procedurally and substantively unconscionable under California law.

4

1    Although the beginnings of plaintiff's contractual relationship with Sears are murky, the original
2    agreement and subsequent modifications by Sears do not necessarily control the enforceability of the
3    arbitration clause presently in effect with Citibank. The Court concludes that, regardless of whether the
4    original agreement with Sears contained an arbitration provision, arbitration must be compelled here>
5    Plaintiff could have opted out of her entire credit agreement with Citibank at or after November 2003,
6    when Citibank issued a new agreement containing an arbitration clause and opt-out opportunity, upon
7    acquiring her account from Sears. Instead, plaintiff accepted Citibank's terms through her subsequent
8    use of the card.

9    Even assuming that the original 1992 agreement was exactly as plaintiff alleges, and had neither
10   arbitration agreement nor subsequent modification provision, the Court's holding would be the same,
11   because Citibank gave plaintiff a valid opportunity to walk away from the account in 2003. Plaintiff
12   does not contest that each of the Citibank agreements, in 2003, 2009, and 2010, provided her with a
13   valid right to opt out of her entire contract and pay off any outstanding balance under the existing terms.
14   If plaintiff no longer wished to be bound to arbitrate claims that might arise in the course of her
15   relationship with Citibank, she could have terminated it in 2003. She did not. She continued to use her
16   card through 2011, when her current grievances accrued. Compl. at 3. Numerous courts have found
17   that continued use or failure to opt out of a card account after the issuer provides a change in terms,
18   including an arbitration agreement, evidences the cardholder's acceptance of those terms. *See, e.g.,*
19   *Daugherty*, 847 F. Supp. 2d at 1196; *Lawman v. Citibank (South Dakota), N.A.*, 2006 WL 6108680, *3-4
20   (C.D. Cal. Mar. 24, 2006); *Egerton v. Citibank, N.A.*, 2004 WL 1057739, *2-3 (C.D. Cal. Feb. 18,
21   2004); *Dumanis v. Citibank (South Dakota), N.A.*, 2007 WL 3253975, *2-3 (W.D.N.Y. Nov. 2, 2007);
22   *Eaves-Leonos v. Assurant, Inc.*, 2008 WL 80173, *3 (W.D. Ky. Jan. 8, 2008).

23   Plaintiff relies on *Badie v. Bank of Am.*, 67 Cal. App. 4th 779 (1998) and *Sears, Roebuck and
24   Co. v. Avery*, 593 S.E.2d 424 (N.C. App. Ct. 2004) for the proposition that a unilateral addition of an
25   arbitration clause under a change-of-terms provision is unenforceable. In those cases, however, the
26   cardholders were provided no realistic opportunity to exit the account when the new terms were added.
27   *See Badie*, 67 Cal. App. 4th at 805 (cardholder had to close the account immediately in order to opt-out
28   of the new ADR requirement inserted in a mailer); *Avery*, 593 S.E.2d at 426-27 (to opt-out cardholder
     had to pay off the entire balance within 30 days, which she could not afford to do).

5

1  Plaintiff also argues that the 2010 Citibank agreement's arbitration clause is procedurally and
2  substantively unconscionable under California law.  However, South Dakota and federal law govern
3  the parties' agreements here (Barnette Decl. ¶ 8, Ex. 1 at 13). Plaintiff's sur-reply argues that under
4  California conflict-of-laws analysis, South Dakota law cannot be selected for reasons of public policy.
5  This argument has been squarely rejected. *See Guerrero v. Equifax Credit Info. Servs., Inc.*, No. CV
6  11-6555, slip op. at 3-5 (C.D. Cal. Feb. 24, 2012).  Thus, California's laws of unconscionability do not
7  apply.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS defendants' motion to compel arbitration and STAYS the proceedings in this Court pending resolution of the arbitration. Dkt. 15. Because this Order addresses the basis for plaintiff's request for leave to file a motion for reconsideration of the Court's September 28, 2012, minute order,[3] that motion is also DENIED. Dkt. 34.

**IT IS SO ORDERED.**

Dated: October 16, 2012

SUSAN ILLSTON
United States District Judge

---

[3] Plaintiff bases her motion for leave to file a motion for reconsideration on the 1998 Sears exemplar discussed *supra* note 1. As discussed, the validity of the agreements prior to Citibank's November 2003 acquisition of plaintiff's account are not dispositive.